# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CP, on her own behalf and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>UNITEDHEALTHCARE INSURANCE COMPANY and UNITED BEHAVIORAL HEALTH,<br><br>    Defendants. | Case No. _____ |

# CLASS ACTION COMPLAINT

Plaintiff CP, a pseudonym[1] ("Plaintiff"), complains as follows on her own behalf and on behalf of all others similarly situated, based on the best of her knowledge, information and belief, formed after an inquiry reasonable under the circumstances by herself and her undersigned counsel, against Defendants UnitedHealthcare Insurance Company and United Behavioral Health (collectively referred to herein as "United" or "Defendants," unless otherwise indicated):

## INTRODUCTION

1. Telehealth services have become an increasingly important part of the health care system in recent years, especially during the COVID-19 pandemic. According to a July 19, 2021 report by McKinsey & Co., "telehealth usage surged as consumers and providers sought ways to safely access and deliver healthcare," with "overall telehealth utilization for office visits and outpatient care [being] 78 times higher" in April 2020 than only two months earlier, in February 2020. As of July 2021, "telehealth utilization [had] stabilized at levels 38x higher than before the

---

[1] Because this action relates to Plaintiff's highly-sensitive personal health information, Plaintiff will file a motion for leave to proceed anonymously as soon as practicable after Defendants are served and appear.

pandemic," with telehealth office and outpatient visits representing from 13 to 17 percent of services across all specialties.

2. This case arises from United's decision, in the midst of this dramatic rise in telehealth services during the COVID-19 pandemic, to deviate from the reimbursement rates for such services prescribed by the terms of its healthcare plans, underpay benefits due to its members for covered telehealth services, and pad its own profits with the difference.

3. Plaintiff CP is a participant in a health care plan sponsored by her private employer. The plan is fully insured by United, which issued the plan and also administers it. The plan is subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.

4. Plaintiff's plan provides coverage for telehealth services, including when they are received from an out-of-network provider. The written terms of Plaintiffs' plan state that the plan will pay benefits for services from out-of-network providers equal to 110% of the amount that Medicare would pay for the same services.

5. As of March 31, 2021, the Centers for Medicare and Medicaid Services ("CMS") increased the amount it pays for most telehealth services. United, however, ignored this change and continued to calculate and pay benefits for telehealth services from out-of-network providers using the lower rates indicated by the superseded CMS policy—including when it paid benefits under Plaintiff's plan for Plaintiff's covered telehealth psychotherapy appointments. As a result, United underpaid the benefits due to Plaintiff under her plan, leaving her responsible to pay her provider the difference. Meanwhile, United pocketed the benefits it did not pay Plaintiff, adding them to its exorbitant profits.

6. In so doing, United unreasonably interpreted the written terms of Plaintiff's plan, violated ERISA, and breached the fiduciary duties of care, prudence, and loyalty it owes to Plaintiff when carrying out its responsibilities for administering Plaintiff's plan.

7. Moreover, because United follows the same policies and practices when calculating benefits for covered services under all the employer-sponsored plans it administers, its failure to apply the increase in Medicare's allowed rates for telehealth services similarly injured many others just like Plaintiff.

8. Plaintiff, accordingly, brings this Complaint, on her own behalf and on behalf of all the other ERISA plan members injured by United's self-serving telehealth reimbursement policy, to put a stop to United's illegal refusal to follow its plans' terms and to disgorge from United the benefit payments it unjustly and illegally retained.

## THE PARTIES

9. Plaintiff CP is a participant in a fully-insured employee welfare benefit plan sponsored by her employer and issued and underwritten by Defendant UnitedHealthcare Insurance Company ("Plaintiff's Plan" or "the Plan"). Plaintiff resides in Chicago, Illinois.

10. Defendant UnitedHealthcare Insurance Company ("UHIC") is a Connecticut corporation, organized and existing pursuant to the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut.

11. Defendant United Behavioral Health ("UBH") is a California corporation, organized and existing pursuant to the laws of the State of California, with its principal place of business in San Francisco, California. UBH operates under the brand name, "Optum."

12. UHIC and UBH are both fully-owned and controlled subsidiaries of UnitedHealth Group Incorporated ("UHG").

13. UHIC is the underwriter of and claims administrator for Plaintiff's Plan. UHIC wrote and issued the Certificate of Coverage for the Plan, which names UHIC as the Claims Fiduciary for the Plan.

14. As the claims administrator of Plaintiff's Plan, UHIC has the authority and responsibility to interpret the written terms of the Plan, make final and binding coverage determinations pursuant to those Plan terms, calculate the amount of benefits due under the Plan terms for covered services, and issue benefit payments on behalf of the Plan. As such, UHIC is a fiduciary under ERISA.

15. UHIC has delegated its responsibility for administering mental health and substance use disorder benefits under employer-sponsored health benefit plans to its corporate affiliate, UBH. As such, whenever a request for benefits pertains to mental health or substance use disorder treatment, UBH interprets the written terms of the plan, makes final and binding coverage determinations, calculates benefits due for covered services, and issues benefit payments on behalf of the plan. UBH, therefore, is also a fiduciary under ERISA.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1132(e) (ERISA).

17. Venue is appropriate in this District. Defendant UHIC is headquartered in this District, administers plans here, and conducts significant operations here.

18. Personal jurisdiction over Defendant UBH exists with this Court because UBH acts as a fiduciary on behalf of residents of this district.

# STATEMENT OF FACTS

19. Telehealth services are any healthcare services rendered via the internet or through a telecommunication system when the healthcare professional and the patient are not located at the same site.

20. The Centers for Medicare and Medicaid Services ("CMS") and the American Medical Association ("AMA") both recognize a wide variety of services that can effectively be provided through telehealth, such as assessments of new or established patients, follow-up care, medication management, physical, speech, and occupational therapy, and outpatient mental health and addiction services like psychotherapy.

21. Under United's telehealth reimbursement policy, which it applies to all the plans it administers, scores of telehealth services are eligible for reimbursement, including all telehealth services recognized by CMS and the AMA.

## I.     Benefit Calculations Under Plaintiff's Plan Are Tied to Medicare Rates

22. The written terms of Plaintiff's Plan state that the Plan covers enumerated healthcare services ("covered services"), whether they are provided by healthcare professionals who are members of United's network (*i.e.*, "in-network" providers) or professionals who are not members of the network (*i.e.*, "out-of-network," or "ONET" providers).

23. The Plan states that "Allowed Amounts" are the amounts United will pay in benefits for covered services.

24. For covered services received from ONET providers, the Plan states that "Allowed Amounts are determined based on 110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for the same or similar service within the geographic market."

25. The Plan further states that United "update[s] the CMS published rate data on a regular basis when updated data from CMS becomes available," adding that "[t]hese updates are typically put in place within 30-90 days after CMS updates its data."

26. Plaintiff's Plan further provides that Plaintiff remains liable to her healthcare provider for any ONET charges that the Plan does not pay. Thus, the less the Plan pays in benefits for a covered service by an ONET provider, the more money Plaintiff owes to the provider for that covered service.

## II.  CMS's Published Rates for Telehealth Services Increased as of April 2020

27. CMS publishes a Physician Fee Schedule setting forth the rates it allows for various healthcare services.

28. As reflected in the Physician Fee Schedule, CMS generally pays providers different amounts for outpatient professional services, depending on whether the services are performed in the provider's office or in a facility, such as a hospital. If the service is provided in a facility, CMS pays the provider a lower professional fee (hereafter, the "Facility-Based Rate"), but also pays the venue at which the service is provided a separate facility fee. If the service is provided in an office, CMS pays the provider a higher professional fee (hereafter, the "Office-Based Rate") and does not pay anyone a separate facility fee.

29. Prior to the COVID-19 pandemic, CMS's policies stated that providers who offered services through telehealth would be paid the lower Facility-Based Rate for those services, even if the provider ordinarily performed the service from an office and not a facility.

30. Effective March 31, 2020, however, CMS modified its policy in light of the COVID-19 pandemic. Under the current CMS rate policy, if a provider ordinarily performs a given service (i.e., in person) in his or her office, the higher Office-Based Rate applies to

telehealth claims for that service. The lower Facility-Based Rate only applies to telehealth services if the provider ordinarily performs the service in a hospital or other facility.

31. CMS described its change in policy as follows:

> [T]he assumptions that have supported payment of telehealth services at the [Physician Fee Schedule] facility rate would not apply in many circumstances for services furnished during the [Public Health Emergency ("PHE")] for the COVID-19 pandemic. Instead, we believe that, as more telehealth services are furnished to patients wherever they are located rather than in statutory originating sites, it would be appropriate to assume that the relative resource cost of services furnished through telehealth should be reflected in the payment to the furnishing physician or practitioner as if they furnished the service in person, and to assign the payment rate that ordinarily would have been paid under the [Physician Fee Schedule] were the services furnished in person. For example, a physician practicing in an office setting who, under the PHE for the COVID-19 pandemic, sees patients via telehealth instead of in person would be paid at the non-facility, or office, rate for these services. Similarly, a physician who typically sees patients in an outpatient provider-based clinic of a hospital would be paid the facility rate for services newly furnished via telehealth.
>
> To implement this change on an interim basis, we are instructing physicians and practitioners who bill for Medicare telehealth services to report the [Place of Service] code that would have been reported had the service been furnished in person.

85 Fed. Reg. 19230 (April 6, 2020).

32. This CMS policy remains in effect as of the date of this Complaint.

### III. United's Failure to Apply Medicare Rates Following the Change in CMS Policy

33. Plaintiff regularly receives outpatient mental health treatment services from her ONET psychotherapist—specifically, 45-minute sessions of psychotherapy. Prior to July 2020, these services were provided in her psychotherapist's office, and United appropriately paid benefits for these services under Plaintiff's plan based on the higher Office-Based Rate on the CMS Physician Fee Schedule.

7

34. After the COVID-19 pandemic led to widespread business closures in March 2020, however, Plaintiff's psychotherapist began providing therapy to Plaintiff—exactly the same service Plaintiff had been receiving in person—via telehealth. Although United initially correctly calculated the Allowed Amount for these services based on Medicare's published Office-Based Rates, by July 2020, United saw an opportunity to save itself money by ignoring the Medicare rate change and instead applying the lower Facility-Based Rate.

35. In 2020, the CMS Physician Fee Schedule reflected an Office-Based Rate of $98.56 and a Facility-Based Rate of $88.81 for a 45-minute session of psychotherapy in the Chicago area. Under the current CMS reimbursement policy in effect since March 31, 2020, the Medicare-allowed telehealth rate for these services was the higher, Office-Based Rate.

36. Therefore, according to Plaintiff's Plan, United should have calculated the Allowed Amount at 110% of the published Medicare Office-Based Rate—equal to $108.42—for each session of psychotherapy Plaintiff received via telehealth. Instead, for each of the 19 telehealth sessions Plaintiff received from July 2020 through December 2020, United only allowed $97.69 per session, which is exactly 110% of the published Facility-Based Rate.

37. By using the Facility-Based Rate rather than the Office-Based Rate to calculate the benefits due to Plaintiff under her plan, United shortchanged the Allowed Amount by $10.73 per session during this period, and consequently, it underpaid the benefits due to Plaintiff.

38. Although the published Medicare rates changed in 2021 and again in 2022, United has continued to underpay the benefits due to Plaintiff by using the Facility-Based Rate to calculate the Allowed Amount.

39. Plaintiff filed an administrative appeal with United by letter dated November 22, 2021, challenging the reimbursement rates allowed by United for the psychotherapy services she

received via telehealth from July 8, 2020 through October 12, 2021, based on the discrepancies set out above between the Allowed Amounts specified by Plaintiff's written plan terms and the amounts United calculated and the benefits it paid.

40. Plaintiff asked United to reprocess her claims and issue the outstanding payments, plus interest due to the late payment. Plaintiff also requested documentation showing how United calculated the Allowed Amount for her claims.

41. United denied Plaintiff's appeal by letter dated December 14, 2021. The letter, on UBH letterhead, reported that "insurance coverage is provided by UnitedHealthcare Insurance Company" and that UBH was "responsible for making benefit coverage determinations for mental health… services that are provided by" the Plan.

42. In explaining the denial, United stated:

Claims is upholding their payment for date(s) of service 07/08/2020 through 10/21/2021 with [Plaintiff's psychotherapist]. The rates for 2021, January through March 2021 were processed at the correct rate. Maximum Non-Network Reimbursement Program (MNRP) -MNRP rate times 110%. The rates changed April 2021 to current new allowable. The MNRP rates can vary based on the place of service billed on the claim form and they can change year to year. No additional payments were warranted.

43. The letter failed to respond to Plaintiff's request for supporting documentation relating to how United processed the claims, in violation of United's obligations under ERISA. Without providing the requested data, United offered Plaintiff the opportunity to submit a second level appeal.

44. Plaintiff filed a second-level appeal on December 22, 2021, again challenging United's underpayments for the identified services and again pointing out the correct published Medicare rates for 2020 and 2021. She similarly repeated her demand under ERISA for access to United's documentation underlying its processing of her claims.

45. United denied the second-level appeal by letter dated January 10, 2022 on the same UBH letterhead. Without providing any further explanation, United stated only that "it has been determined that the submitted claim(s) for date(s) of service 07/08/2020 through 10/12/2021 has not been approved for additional payment," and that, "[p]er the claim processing department date(s) of service 07/08/2020 through 10/12/2021 were processed correctly, per the United Behavioral Health guidelines." Once again, United failed to provide any of the supporting documentation relating to its processing of Plaintiff's claims.

46. The letter concluded by confirming that Plaintiff had exhausted her internal appeals, stating: "This is the Final Adverse Determination of your internal appeal. All internal appeals through UBH have been exhausted."

47. Meanwhile, United has continued to underpay Plaintiff's benefits, even after Plaintiff brought the correct published Medicare rates to its attention.

IV. **United's ERISA Violations**

48. Plaintiff's Plan set the Allowed Amount for ONET services at 110% of Medicare rates. As of March 31, 2020, CMS set the Medicare rates for the telehealth services Plaintiff received at the higher Office-Based Rate. United, however, calculated and paid less than the Plan provided because it based the benefit payment on the lower Facility-Based Rate. In so doing, United unreasonably interpreted the written terms of Plaintiff's Plan and violated its obligations under ERISA to administer the Plan according to its written terms. As a result, United underpaid the benefits due to Plaintiff under the terms of her Plan.

49. In addition, as ERISA fiduciaries, UHIC and UBH owe duties of loyalty to plan participants and beneficiaries, which require them to act "solely in the interests of the participants and beneficiaries" of the plans they administer and for the "exclusive purpose" of

providing benefits to participants and beneficiaries and paying reasonable expenses of administering the plans. 29 U.S.C. § 1104(a)(1)(A). UHIC and UBH also owe plan participants and beneficiaries duties of care, which require Defendants to act with reasonable "care, skill, prudence, and diligence" and in accordance with the terms of the plans, so long as such terms are consistent with ERISA. *Id.* §§ 1104(a)(1)(B), (D). UHIC and UBH also owe duties as co-fiduciaries to prevent or, at least, make reasonable efforts to remedy, each other's fiduciary breaches. 29 U.S.C § 1105.

50. Both Defendants violated each of these fiduciary duties by deliberately calculating and paying Plaintiff's benefits using a lower rate than her Plan prescribed. United's reimbursement methodology contradicted the written plan terms, reflecting at least a failure of care, skill, prudence, and diligence. Nor was United's decision to ignore CMS policy and apply the lower Facility-Based made "solely in the interest of," or for the "exclusive purpose" of providing benefits to Plaintiff. Indeed, this decision was contrary to Plaintiff's best interests because it increased her financial exposure for the covered services.

51. United, however, benefited directly from the reduced benefit payments that resulted from its policy of ignoring CMS's telehealth rate change. As the underwriter of fully-insured plans, UHIC is responsible for paying benefits under those plans from its own assets. UBH assumed some or all of this financial risk to pay benefits for mental health and substance use disorder treatment under fully-insured plans. As a result, every dollar that United pays in benefits cuts directly against its bottom line—while every dollar United *avoids* paying in benefits enhances its bottom line. In short, the less United pays in benefits, the more it makes in profit.

52. When United failed to adopt CMS's change in methodology for payment of telehealth services, it was no longer using the actual published Medicare rates for those services,

but instead was deliberately using a lower rate, paying less in benefits, and pocketing the difference.

53. Stated differently, when Plaintiff switched from in-person sessions in her therapist's office to receiving the same services via telehealth, under her Plan's written terms and the current CMS policy on telehealth reimbursement, her benefit payments for each session should not have changed at all. But by refusing to adhere to the CMS policy, United was able to take advantage of the increased use of telehealth services resulting from the COVID-19 pandemic to pay less in benefits for the same covered services, thereby enriching itself at the expense of its insureds, including Plaintiff.

## **CLASS ALLEGATIONS**

54. Plaintiff incorporates by reference all preceding paragraphs as though each were fully stated herein.

55. United serves as the claims administrator for thousands of ERISA health benefit plans that, like Plaintiff's Plan, require United to calculate benefits due for covered ONET services based on published Medicare rates.

56. United followed a uniform policy and practice with respect to all of these plans, by refusing to follow the change in CMS policy with respect to reimbursement of telehealth services, and instead continuing to use the lower Facility-Based Rate to calculate benefits due for all telehealth services, regardless of where the provider ordinarily performed the services. Because of United's uniform policy and practice of ignoring the actual published Medicare rates for office-based telehealth services, United systematically and uniformly underpaid benefits due for such services under all of these plans.

57. As such, Plaintiff brings each of her claims on behalf of the following class ("Class"):

> Any participant or beneficiary in a health benefit plan governed by ERISA, or their lawful assignee, whose plan states that the amount of benefits due under the plan for covered services received from an out-of-network ("ONET") healthcare provider will be based on a percentage of Medicare rates, and whose request for coverage of office-based telehealth services provided by an ONET healthcare provider was approved and paid by United on or after March 31, 2020.

58. The members of the class can be objectively ascertained through the use of information contained in United's files because United knows who its members are, by which plans they are insured, what type of claims for benefits they have filed, how those claims were processed, how benefits were calculated, and when they were paid.

59. Upon information and belief, the members of the Class are so numerous that joinder of all members is impracticable. While the number of class members is solely within United's possession, Plaintiff in good faith believes that the Class consists of at least hundreds and likely thousands of ERISA plan participants and beneficiaries, given how many services are eligible to be provided via telehealth and how widespread the use of telehealth has become since the inception of the COVID-19 pandemic.

60. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class, including but not limited to: (a) whether the written terms of the Class members' Plans require United to calculate benefit payments for ONET services based on the published CMS rates for such services; (b) whether United's use of the lower, Facility-Based Rate published by CMS rather than the higher, Office-Based Rate to calculate benefits for office-based ONET telehealth services violated the written terms of the Class members' Plans; (c) whether United's use of the lower, Facility-Based Rate rather than the higher, Office-Based Rate to calculate benefits for

13

office-based ONET telehealth services breached its fiduciary duties under ERISA; and

(d) whether the remedies requested are available to the Class.

61. Certification is desirable and proper because the Plaintiff's claims are typical of the claims of the members of the class Plaintiff seeks to represent. As alleged herein, United adopted a uniform policy and practice that applies equally to Plaintiff and all other similarly situated members of the ERISA plans United administers.

62. Plaintiff will fairly and adequately protect the interests of the members of the Class, is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class action and ERISA health insurance-related litigation, and has no interests antagonistic to or in conflict with those of the Class.

63. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Class is impracticable. Further, the expense and burden of individual litigation make it irrational for class members to sue individually to redress the harm done to them. Given the uniform policy and practices at issue, there will also be no difficulty in the management of this litigation as a class action.

## COUNT I

64. Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

65. Plaintiff brings this Count on behalf of herself and all other members of the Class alleged above, pursuant to 29 U.S.C. § 1132(a)(1)(B).

66. United has systematically violated the terms of Plaintiff's and the Class members' Plans and ERISA by calculating the amount of benefits due for covered office-based telehealth services received from ONET healthcare providers based on the lower, Facility-Based Rates

published by CMS for such services, rather than the higher, Office-Based Rates Medicare actually allows for the services.

67. As a result of its uniform policy and practice, United systematically underpaid Plaintiffs' and the Class members' benefits for these covered services.

68. Because United continues to refuse to adhere to the current CMS policy on reimbursement for telehealth services and to honor the actual published Medicare rates for such services, Plaintiff and the Class members face an ongoing, material risk that United will continue to underpay their claims for covered telehealth services in the future.

69. To remedy United's systematic underpayments of benefits to date, Plaintiff seeks an award of the benefits due to her and to the Class members, plus interest as allowed by law.

70. To prevent United from injuring her and the Class members in the same way in the future, Plaintiff seeks declaratory and injunctive relief as set forth in the Prayer for Relief, below.

## COUNT II

71. Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

72. Plaintiff brings this Count on behalf of herself and all the other members of the Class alleged above, pursuant to 29 U.S.C. § 1132(a)(1)(B), or, in the alternative, pursuant to 29 U.S.C. § 1132(a)(3).

73. As explained above, when United calculated and paid benefits for the covered telehealth services received by Plaintiff and the members of the putative Class, United was acting as a fiduciary under ERISA.

74. As an ERISA fiduciary, pursuant to 29 U.S.C. § 1104(a), United was required to carry out its duties solely in the interests of the participants and beneficiaries of the plans and for the exclusive purpose of providing benefits to those participants and beneficiaries; to act with care, skill, diligence and prudence; to comply with the written plan terms; and to prevent or act reasonably to remedy breaches by co-fiduciaries.

75. United breached each of those duties by ignoring the change in CMS policy to pay for office-based telehealth services using the Office-Based Rate published by CMS for the service and instead using the lower, Facility-Based Rate. In doing so, United placed its own financial interests above the interests of the plan participants and beneficiaries, taking advantage of the increase in telehealth services caused by the COVID-19 pandemic to line its pockets with money it should have paid out in benefits for those services.

76. Plaintiff and the other members of the putative Class have been harmed by United's breaches of fiduciary duty because United enriched itself at their expense.

77. Plaintiff seeks the equitable relief identified below to remedy United's breaches of fiduciary duty and to prevent similar breaches from occurring in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment in her favor against United as follows:

A. Certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B. Declaring that United violated its legal obligations in the manner described herein;

C. Permanently enjoining United from engaging in the misconduct described herein;

D. Awarding Plaintiff and the other Class Members benefits due to them under their Plans, plus late-payment interest as permitted by ERISA and pre- and post-judgment interest;

E. Awarding Plaintiff and the other Class Members appropriate equitable relief, including but not necessarily limited to an appropriate monetary award based on disgorgement, restitution, surcharge or other basis, and additional declaratory and injunctive relief;

F. Awarding Plaintiff disbursements and expenses of this action, including reasonable attorneys' and expert fees, in amounts to be determined by the Court, pursuant to 29 U.S.C. § 1132(g); and

G. Granting such other and further relief as is just and proper in light of the evidence.

Dated: July 7, 2022

/s/ ct 20986
Elizabeth Acee (ct 20986)
BARCLAY DAMON LLP
545 Long Wharf Drive, Ninth Floor
New Haven, Connecticut 06511
Tel: (203) 672-2650
Fax: (203) 654-3260
eacee@barclaydamon.com

D. Brian Hufford (*pro hac vice* forthcoming)
Jason S. Cowart (*pro hac vice* forthcoming)
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel.: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

Caroline E. Reynolds (*pro hac vice* forthcoming)
Andrew Goldfarb (*pro hac vice* forthcoming)
ZUCKERMAN SPAEDER LLP
1800 M St., NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
creynolds@zuckerman.com
agoldfarb@zuckerman.com

Meiram Bendat (Cal. Bar No. 198884)
PSYCH-APPEAL, INC.
7 West Figueroa Street, Suite 300
PMB #300059
Santa Barbara, CA 93101
Tel: (310) 598-3690 Ext: 101
Fax: (888) 975-1957
mbendat@psych-appeal.com

*Counsel for Plaintiff and the Putative Class*