**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CP, on her own behalf and on behalf of all others similarly situated, | Civil Action No. 3:22-cv-00850-SVN |
| Plaintiff, | |
| v. | |
| UNITEDHEALTHCARE INSURANCE COMPANY and UNITED BEHAVIORAL HEALTH, | October 21, 2022 |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**CONSENT MOTION TO PROCEED UNDER PSEUDONYM AND**
**TO SEAL PERSONALLY IDENTIFYING INFORMATION**

## <u>INTRODUCTION AND STATEMENT OF RELEVANT FACTS</u>

In this action, Plaintiff, "CP," brings putative class claims against Defendants UnitedHealthcare Insurance Company and United Behavioral Health (collectively referred to herein as "United" or "Defendants") for violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and the terms of Plaintiff's and the class members' employee health benefit plans, based on Defendants' underpayment of benefits due for telehealth services received by Plaintiff and the class members.

Plaintiff filed her Complaint, under the pseudonym "CP," on her own behalf and on behalf of a putative class of similarly-situated individuals. Plaintiff has made her true identity known to Defendants, and is prepared to make her true identity known to the Court under seal. Accordingly, in bringing this Motion, Plaintiff makes only a limited request: that her name and personally identifying information be shielded from public disclosure.

There is good cause to grant Plaintiff this relief. Plaintiff's lawsuit implicates her highly sensitive information, including confidential health information.

## <u>ARGUMENT</u>

## I.     <u>The Court Should Allow Plaintiff to Proceed Pseudonymously.</u>

Courts in this circuit allow plaintiffs to bring cases without disclosing their identities where appropriate. *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 189 (2d Cir. 2008). In *Sealed Plaintiff*, the Second Circuit established a non-exhaustive ten-factor balancing test for determining whether to allow a plaintiff to proceed pseudonymously:

> (1) whether the litigation involves matters that are "highly sensitive and [of a] personal nature," . . . (2) "whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties," . . . (3) whether identification presents other harms and the likely severity of those harms . . . including whether "the injury litigated against would be incurred as a result of the disclosure of the

plaintiff's identity," . . . (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure . . . particularly in light of his age . . . (5) whether the suit is challenging the actions of the government or that of private parties . . . (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court . . . (7) whether the plaintiff's identity has thus far been kept confidential . . . (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity . . . (9) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities," . . . and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff. . . .

*Id.* at 190 (internal citations omitted). These factors, which are addressed in turn below, weigh in favor of granting Plaintiff the right to proceed pseudonymously.

**"(1) [W]hether the litigation involves matters that are 'highly sensitive and [of a] personal nature. . . .'"** Plaintiff's Complaint contains information that is highly sensitive and personal, namely that she is being treated for a mental health condition. Unfortunately, despite their prevalence, mental health conditions continue to be subject to significant stigma and misunderstanding. For that reason, being publicly identified as obtaining ongoing mental health treatment would be highly embarrassing to Plaintiff and would subject her to stresses that could potentially exacerbate her condition.

**"(2) '[W]hether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties.'"** Plaintiff is not seeking to proceed under a pseudonym out of concern over retaliation by Defendants. Indeed, she has already disclosed her identity to them.

**"(3) [W]hether identification presents other harms and the likely severity of those harms . . . including whether 'the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.'"** Plaintiff would likely suffer substantial harm were her identity disclosed publicly. As noted above, the sad reality is that people with mental

illnesses continue to suffer from societal stigma and discrimination. *See, e.g.*, Prof. Graham Thornicroft, Ph.D., et al., *Evidence for Effective Interventions to Reduce Mental-Health-Related Stigma and Discrimination*, 387 THE LANCET 1123-32 (2016) ("Stigma and discrimination in relation to mental illnesses have been described as having worse consequences than the conditions themselves"). For this reason, forcing Plaintiff to disclose her mental health treatment to the public would, at a minimum, cause her needless stress, anxiety, and embarrassment.

**"(4) [W]hether the plaintiff is particularly vulnerable to the possible harms of disclosure . . . particularly in light of his age. . . ."** Although Plaintiff is an adult, she is vulnerable to the harms stemming from disclosure of her identity because of her mental health condition.

**"(5) [W]hether the suit is challenging the actions of the government or that of private parties. . . ."** This action is against private parties, not any governmental entity. However, courts have allowed parties to proceed pseudonymously against private parties. *See, e.g.*, *Next Phase Distrib., Inc. v. Does 1-138*, No. 11 Civ. 9706 (KBF), 2012 WL 691830 (S.D.N.Y. Mar. 1, 2012).

**"(6) [W]hether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court. . . ."** There is and can be no prejudice to Defendants, because CP does not seek to keep her identity from Defendants, only from the public. There have been two class actions within the Second Circuit where courts have had to consider whether to let the lead plaintiff proceed pseudonymously. In both, this was the decisive factor.

In *Doe I v. Four Brothers Pizza, Inc.*, No. 13 CV 1505(VB), 2013 WL 6083414, at *10

3

(S.D.N.Y. Nov. 19, 2013), the court found that while the second factor (threat of retaliation) weighed in favor of anonymity, it was outweighed by the sixth factor, since "[w]ithout knowing who has brought suit against them, defendants will be hard-pressed to conduct an internal investigation to develop their defenses. . . . Significantly, it will not be feasible for the parties to proceed with discovery in a meaningful way while plaintiffs remain anonymous."

In *Plaintiffs # 1-21 v. County of Suffolk*, 138 F. Supp. 3d 264, 277 (E.D.N.Y. 2015), by contrast, plaintiffs agreed to a limited disclosure, pursuant to a protective order, of their true identities to the defendants' counsel and other essential individuals to enable the defendants "to conduct meaningful discovery." That, the court reasoned, "eviscerated" any concern about prejudice to the defendants, such that the court held that the plaintiffs could proceed pseudonymously. *Id.* (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 687 (11th Cir. 2001)).

This case is even more clear-cut than *Plaintiffs # 1-21*, since the lead plaintiff here, CP, has already disclosed her identity to Defendants, who, as the administrators of her health insurance benefits, possess complete information about CP and the underpayments she is challenging in this case. There is thus no risk that shielding Plaintiff's identity from public disclosure could possibly prejudice Defendants—as evidenced by the fact that Defendants have consented to Plaintiff's use of a pseudonym. As such, this factor weighs strongly in favor of allowing Plaintiff to proceed pseudonymously.

**"(7) [W]hether the plaintiff's identity has thus far been kept confidential. . . ."** Plaintiff's identity has thus far been kept confidential, since to date, only the Complaint and certain procedural motions have been filed. Plaintiff's identity has yet to be revealed publicly.

**"(8) [W]hether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity. . . ."**  Here, the public's interest will not be significantly impacted by allowing Plaintiff to proceed under a pseudonym. Because this is a putative class action, the overwhelming majority of the identities of the class members will, as a practical matter, never be exposed to the public. While it is true as a general principle that "[t]he people have a right to know who is using their courts," *Sealed Plaintiff*, 537 F.3d at 189 (quoting *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997)), in a class action like this one, where virtually all class members' identities will never be publicly disclosed, the injury to the public interest from shielding CP's identity, as well, is slight.

**"(9) '[W]hether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities.'"** Federal law recognizes that the public has no legitimate, generalized interest in knowing any individual's personal, sensitive health information—i.e., exactly the information that would be disclosed by forcing CP to sue under her own name. For example, the so-called "privacy rule" promulgated under the Health Insurance Portability and Accountability Act ("HIPAA") prohibits health insurers and plan administrators like Defendants from disclosing any protected health information outside a narrow set of permitted circumstances. *See, e.g.*, 45 C.F.R. § 164.502; *see also* 45 C.F.R. § 164.501 (protected health information includes patient's name and address).

In addition, this case presents purely legal questions, making CP's identity largely irrelevant. The benefit claims at issue were all approved by Defendants and paid under the applicable insurance plan, and the coverage decision itself is not at issue. Thus, there is no factual dispute over personal matters such as CP's health condition or the medical necessity of the underlying treatment. Compl. ¶¶ 33-34. There is likewise no dispute about how Defendants

processed CP's claims for coverage, or about what the terms of her insurance plan are. *Id.* ¶¶ 35-47. As such, this case involves only a purely legal dispute about whether the methodology by which Defendants calculated CP's benefits is consistent with the law. For that reason, the public's interest in knowing CP's identity is particularly weak, if any legitimate interest in that information exists at all.

**"(10) [W]hether there are any alternative mechanisms for protecting the confidentiality of the plaintiff. . . ."** Here, there are no alternative methods for protecting Plaintiff's confidentiality. In *Anonymous v. Medco Health Solutions, Inc.*, 588 F. App'x 34, 35 (2d Cir. 2014), the court held that because "[a]ny issues regarding the confidentiality of particular documents or the need for redaction will be handled as they arise" and that "[r]edacted and sealed submissions are routinely used in cases involving sensitive medical information," it would not be necessary to allow the plaintiff to proceed pseudonymously. Here, by contrast, the existence of CP's mental health condition and the treatment she received cannot be adequately redacted. It is not the disclosure of any specific fact about her mental health problems that would harm CP, not even the names of her diagnoses. It is the mere fact that those problems exist at all, and that they are severe enough for her to have sought ongoing treatment, that would cause her embarrassment and could damage her reputation.

Here, factors 1, 3, 6, 7, 8, 9, and 10 all weigh heavily in favor of allowing CP to proceed pseudonymously, while none of the factors weighs against it. Especially given Defendants' consent to this relief, Plaintiff should be allowed to pursue this case under a pseudonym.

## CONCLUSION

For these reasons and such other reasons as may appear just to the Court, Plaintiff "CP" requests that the Court grant her Motion.

Respectfully submitted,

/s/ Caroline E. Reynolds
Elizabeth Acee (ct 20986)
BARCLAY DAMON LLP
545 Long Wharf Drive, Ninth Floor
New Haven, Connecticut 06511
Tel: (203) 672-2650
Fax: (203) 654-3260
eacee@barclaydamon.com

Caroline E. Reynolds (phv 03807) (*pro hac vice*)
Andrew Goldfarb (phv 07743) (*pro hac vice*)
ZUCKERMAN SPAEDER LLP
1800 M St., NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
creynolds@zuckerman.com
agoldfarb@zuckerman.com

Jason S. Cowart (ct 23206) (*pro hac vice*)
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel.: (212) 704-9600
Fax: (212) 704-4256
jcowart@zuckerman.com

Meiram Bendat (phv 206931) (*pro hac vice*)
PSYCH-APPEAL, INC.
7 West Figueroa Street, Suite 300
PMB #300059
Santa Barbara, CA 93101
Tel: (310) 598-3690 Ext: 101
Fax: (888) 975-1957
mbendat@psych-appeal.com

*Counsel for Plaintiff and the Putative Class*